**860-15**

ORIGINAL

RECEIVED IN
COURT OF CRIMINAL APPEALS

OCT 12 2015

Abel Acosta, Clerk

NO._____

IN THE
COURT OF CRIMINAL APPEALS
OF TEXAS

---

JEREMY M. FRANCIS,
                    Appellant/Petitioner

VS.

THE STATE OF TEXAS,
                    Appellee/Respondent

---

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

---

FILED IN
COURT OF CRIMINAL APPEALS

OCT 16 2015

Abel Acosta, Clerk

In Appeal No.05-14-00218-CR
from the
Court of Appeals
for the Fifth Judicial District
Dallas, Texas

Jeremy M. Francis
TDC#1913681
Telford Unit
3899 State Hwy 98
New Boston, Tx 75570

# TABLE OF CONTENTS

INDEX OF AUTHORITIES                                    III

STATEMENT REGARDING ORAL ARGUMENT                        1

STATEMENT OF THE CASE                                    2

STATEMENT OF PROCEDRAL HISTORY                           2

QUESTION FOR REVIEW                                      3

    Did the Fifth Court of Appeals correctly
    evaluate the extraneous offense evidence
    correctly under T.R.E. 403?

ARGUMENT NUMBER ONE                                      4

PRAYER FOR RELIEF                                        5

CERTIFICATE OF SERVICE                                   6

APPENDIX [Opinion]

NO._____

IN THE
COURT OF CRIMINAL APPEALS
OF TEXAS

JEREMY M. FRANCIS,

VS.

THE STATE OF TEXAS,

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

**TO THE COURT OF CRIMINAL APPEALS OF TEXAS:**

Petitioner respectfully submits this Petition for Discretionary review and moves that this Honorable Court grant review of this cause and offers the following in support thereof:

**STATEMENT REGARDING ORAL ARGUMENT**

The petitioner requests oral argument in this case because such argument may assist the Court in applying the facts to the issues raised. It is suggested that oral argument may help simplfy the facts and clarify the issues.

1

## STATEMENT OF THE CASE

The petitioner was charged with the offense of capital murder. After a trial to the jury he was convicted and sentenced to life without the possibility of parole. Petitioner appealed and the Fifth Court of appeals affirmed.

## STATEMENT OF PROCEDURAL HISTORY

In Cause No.F11-62030-L the petitioner was charged with the offense of capital murder. The petitioner was convicted of such offense on February 24, 2014 and appealed the conviction. On June 23, 2015 the Dallas Court of Appeals affirmed the conviction. No motion for rehearing was filed. This petition for Discretionary Review was timely forwarded to the Court of Criminal Appeals of Texas.

## QUESTION FOR REVIEW

### I.

### DID THE FIFTH COURT OF APPEALS CORRECTLY EVALUATE THE THE EXTRANEOUS OFFENSE CORRECTLY UNDER T.R.E. 403?

## ARGUMENT AND AUTHORITIES
## UNDER QUESTION FOR REVIEW NUBER ONE

### A. REASONS FOR REVIEW

Two reasons for review are presented. First the Dallas Court of Appeals decision here is in direct conflict with the decisions of this Honorable Court and the lower appellate courts. T.R.A.P. 66.3(a);(c). Secondly, the Court of Appeals has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by a lower court, as to call for an exercise of the Court of Criminal Appeals power of supervision. T.R.A.P.66.3(f).

### B. ARGUMENT

Petitioner requests this court grant petition to exercise it's power to supervise this State's lower courts. Specifically this court should grant his Petition to examine the ruling of the Dallas Court of Appeals and its holding that the extraneous offense evidence was admissable under T.R.E. 403.

3

## DID THE FIFTH COURT OF APPEALS CORECTLY EVALUATE THE EXTRANEOUS OFFENSE EVIDENCE CORRECTLY UNDER T.R.E. 403?

In the instant case the defense lodged two objections to the introduction of evidence of an unrelated aggravated robbery. (RR3:8) The Court ultimately overruled these objections.

Only relevant evidence is admissible. See TEX.R.EVID.402. Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence." Rule 404(b) provides that evidence of an accused's "other crimes, wrongs or acts is not admissable to prove the character of a person in order to show action in conformity therewith." Evidence of extraneous acts "may, however, be admissable for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowldge, identity, or absence of mistake or accident." Rule 404(b)

When a further objection is made under Rule 403, it will not suffice for the trial court simply to determine that the evidence is relevant to some legitimate non-charater-related purpose such as one of those enumerated in Rule 404(b). "The determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence in view of the **availability of other means of proof and other factors appropriate for making decisions of the kind under Rule 403."** ADVISORY COMMITTEE'S NOTE to FED.R.EVID.404(b).

4

see also **Montomery v. State,**810 s.w.2d 372(Tx.Cr.App.1990)

In affirming Petitioner's conviction the Fifth Court of Appeals simply conducted another Rule 404(b) test instead of the proper Rule 403 test.

Petitioner was found in possesion of shoes with the victims DNA on the sole, his cellphone made calls from the immediate area just minutes before the crime and he made an incriminating phone call from the county jail. Prosecutions have tried and won cases with less evidence than that. But there could have nothing more prejudicial to Petitioner than for the jury to hear evidence of a very similar aggravated robbery and attemted stabbing. The inference that Petitioner is guilty of this crime because he has engaged in similar conduct is not a inference the jury is allowed to draw.

The admission of the extraneous offenses prejudiced Petitioner because of the jury's natural inclination to infer guilt of the charged offense from the extraneous offense evidence. Petitioner lost the presumption of innocence and the possibility of the jury reaching another verdict as the result of presentation of inadmissable character conformity evidence.

### PRAYER FOR RELIEF

For the reasons stated above, it is respectfully submitted that the Court of Criminal Appeals of Texas should grant this Petition for Discretionary Review.

Respectfully submitted,

5

Jeremy M. Francis, PRO SE
TDC#1913681
Telford Unit
3899 State Hwy 98
New Boston, Tx 75570

## CERTIFICATE OF SERVICE

The undersigned Petitioner hereby certifies that a copy of the foregoing Petition has been mailed, U.S. MAIL postage pre-paid, to the Office of the Criminal District Attorney for Dallas County, Frank Crowley Courts Bldg., 133 North Riverfront Blvd. LB-19, Dallas, Tx 75207, and to the State prosecuting Attorney, P.O. Box 12405, Austin, Tx 78711, on this 18th day of September, 2015.

_____
PETITIONER

6

Affirmed as Modified; Opinion Filed June 23, 2015.



In The

# Court of Appeals
## Fifth District of Texas at Dallas

---

### No. 05-14-00218-CR

---

### JEREMY M. FRANCIS, Appellant
### V.
### THE STATE OF TEXAS, Appellee

---

### On Appeal from the Criminal District Court No. 5
### Dallas County, Texas
### Trial Court Cause No. F11-62030-L

---

# MEMORANDUM OPINION
Before Chief Justice Wright, Justice Myers, and Justice Evans
Opinion by Justice Myers

Appellant Jeremy M. Francis was convicted of capital murder and sentenced to life imprisonment without the possibility of parole. In one issue, he argues the trial court abused its discretion by admitting evidence of extraneous offenses during the guilt-innocence phase of the trial. As modified, we affirm the trial court's judgment.

### BACKGROUND

During the early morning hours of Friday, September 16, 2011,[1] Officer Aaron Tobkin of the Dallas Police Department responded to a call at the Providence apartment complex about a body. When he arrived at the complex, Officer Tobkin found a man lying face-down on the sidewalk that ran by the pool area. The man, who was pronounced dead at the scene by Dallas

---

[1] The Court takes judicial notice of the fact that September 16, 2011 was a Friday.

Fire and Rescue, forty-six-year-old Martin Coronado, had two stab wounds to the chest. One of the wounds went nine inches into the deceased's body—through the chest wall, the left lung, and the heart—and was fatal, according to the medical examiner. The examiner testified that the stab wounds would have been caused by an instrument that was sharp on one side and blunt on the other—like a single-blade knife. A receipt attached to a Whataburger bag that was found near the deceased's body showed a time-stamp of 5:17:06 a.m.

Detective Esteban Montenegro of the Dallas Police Department's Homicide Unit was assigned to the case. He testified that there was no physical evidence other than a bloody footprint found at the crime scene, and no eyewitnesses. One resident testified that she "heard some friction" in front of the window of her apartment, and she heard what sounded like a man's voice saying, "Stop. Get down. Shut up. Get down." She looked out the window and saw a man lying in front of her window; he was not moving. She called 911. But the resident never saw the actual commotion and there was no video footage of the scene from the apartment complex's or nearby business's surveillance cameras.

During his investigation, Detective Montenegro also contacted the deceased's wife and learned that the complainant's bank card had been used at a 7–Eleven on Lemmon Avenue, a Quick Trip on Mockingbird Lane, and a Dart vending machine between 12:16 p.m. on September 16 and 10 p.m. on September 17. Surveillance video from the 7–Eleven, taken on September 16, 2011, showed a white car with two black males pulling up to a gas pump.

On September 21, 2011, Officer Russell Barrett of the Dallas Police Department was working in an undercover capacity driving down Douglas Avenue in an unmarked police car. He saw two males, later identified as appellant and William Langrum, appellant's uncle, involved in an altercation with another male. Langrum had a knife and was swinging at the man, who fell backwards. Barrett saw Langrum grab the man's bag. Francis was "kind of jumping around,

grabbing at the bag, too, looking around."

Appellant and Langrum fled on foot to a vehicle in the nearby parking lot. Langrum drove the vehicle and appellant was in the passenger's seat. Officer Barrett followed them in his unmarked vehicle from Douglas to northbound Maple Avenue, where a squad car got behind the vehicle and attempted to stop it. From the radio traffic, Officer Barrett could hear officers saying that the two suspects had gotten out of their car, been chased on foot by officers, and then got back in the car and drove away. Police pursued the suspects as they drove northbound on Cedar Springs to Mockingbird, and then northbound on Lemmon Avenue, where the vehicle was disabled after hitting the curb. Appellant and Langrum got out of the car and fled. Barrett chased the driver, Langrum, who was holding either a large butcher knife or a hunting-style knife in his hand. Langrum dropped the knife near a car dealership and continued running. Officer Barrett apprehended Langrum and then went back and recovered the knife, which was admitted at appellant's trial.

Officer Jeffrey Eggleston, who was working in plainclothes with Officer Barrett and two other officers on September 21, 2011, testified that he assisted the other officers after he heard about the chase. He saw the vehicle hit the curb and the two occupants get out of the car and flee. He chased the passenger, whom he identified as appellant, and apprehended him.

Appellant's and Langrum's clothing was taken from them at the jail and tested. Alex Nham, a forensic biologist with the Southwestern Institute of Forensic Sciences (SWIFS), confirmed the presence of blood on swabs taken from Langrum's T-shirt, underwear, shorts, and a towel. The presumptive test for blood was positive for swabs taken from appellant's T-shirt and right shoe,[2] but there was not enough of a sample to confirm the presence of blood.

---

[2] In the reporter's record, Nham described this as appellant's "red" shoe, but his written report, which was admitted without objection, stated that it was actually appellant's *right* shoe that tested positive using the presumptive test.

−3−

Appellant's shorts, left shoe, and blue and white T-shirts also tested positive for traces of blood.

Kenneth Balagot, a forensic biologist with SWIFS, tested the autopsy blood sample taken from Coronado and DNA buccal swabs taken from Langrum and appellant. In a DNA swabbing from the knife, Balagot found a mixture of at least two individuals, and Langrum was a possible contributor to that sample. Coronado and appellant were excluded as contributors. A stain from appellant's blue T-shirt likewise contained a mixture of at least two contributors—one major and the other minor. The major contributor matched the DNA profile of Langrum; Coronado and appellant were excluded as the minor contributor. The swabbing of a stain from appellant's right shoe included a low level of DNA, but Balagot was able to do a comparison using that sample, and he found that Coronado was a possible contributor of that sample. The conservative random match probability with that sample for Coronado was one in 11.2 million, i.e., one would expect to see that DNA profile or contribution once in a population of 11.2 million people. Balagot also detected a single genetic marker that corresponded to the DNA profiles of appellant and Langrum. But the random match probability for Langrum was 68 in 100; in other words, one could include 68 percent of a population as being a possible contributor. As Balagot recognized, one in 11.2 million is a stronger match or inclusion than 68 in 100.

Shaqundra Brown, appellant's girlfriend, testified that around the time of her birthday, September 14, 2011, appellant purchased a new pair of Converse tennis shoes to attend a high school football game on Friday night. Appellant left his cell phone at her home on Thursday night and later called her from Langrum's phone at around 5:15 a.m. the following morning. After talking briefly, appellant told her, "I'll call you back. I'm fixing to go do something." He later retrieved his cell phone and walked Brown to school. In a jail phone call to Brown that was made after he was arrested, appellant told Brown he had a murder case for a Mexican man and that "murder is the easiest case to beat." Appellant added that "as long as there's no witness

around, you can beat it."

The trial court admitted into evidence detailed Metro PCS cell phone records for the cell phones belonging to appellant and Langrum. The call records showed several cell phone calls between Langrum and appellant's cell phones on the day of the offense, one of which was an outgoing call from Langrum to appellant at 5:15 a.m. that lasted for thirteen minutes and twenty-one seconds. Using the information in the call records and the locations of the cell phone towers with which each cell phone communicated, Michael Bosillo, a custodian of records for Metro PCS and a retired police detective, prepared Google maps showing that certain calls made to and from appellant's cell phone on the day of the offense used cell phone towers that were within the general area of the crime scene at the 1800 block of W. Mockingbird Lane as well as the 7–Eleven, Quick Trip, and Dart transactions involving Coronado's bank card. One map, in particular, showed that the 5:15 a.m. call used a cell phone tower that was located within a one mile radius of the crime scene. During cross-examination, however, Bosillo acknowledged that there was no technology that determined exactly where a person was located within a sector, and that a given cell phone tower could, given the right set of circumstances, cover up to 8.4 miles.

## DISCUSSION

In his issue, appellant contends the trial court abused its discretion by admitting evidence of extraneous offenses during the guilt–innocence phase of the trial. Appellant challenges the admission of the September 21, 2011 aggravated robbery and evading arrest/flight offenses, arguing they were inadmissible under rules 404(b) and 403 of the Texas Rules of Evidence. The State responds that appellant failed to preserve error and that, alternatively, the trial court did not abuse its discretion.

The record shows that, on February 7, 2014, the prosecutor filed an amended notice of extraneous offenses that listed twelve extraneous offenses, including those that occurred on

September 21, 2011—e.g., aggravated robbery in cause number F11–60159, and evading arrest in a vehicle in cause F11–60433. On February 19, 2014, prior to opening statements, the trial court held a hearing out of the jury's presence to discuss the extraneous offenses that the State intended to introduce. The record reads in part as follows:

> [DEFENSE COUNSEL]: Your, Honor, I've been advised by the State they plan on introducing an extraneous in this case. Particularly, another agg robbery and an evading arrest. We would object to the introduction of that evidence, the extraneous conduct, under 401, 402, 403 and 404 of the evidence code.
>
> THE COURT: State's response.
>
> [THE PROSECUTOR]: Judge, the suspect in this case, Jeremy Francis, because of the events that occurred on 9/21—even though this Court has already heard the events of 9/21 for this particular record, and not William Langrum's record, I will reiterate the proffer of Jeremy Francis is alleged to have murdered Martin Coronado on September 16th. However, on September 21st, another murder occurred of a woman by the name of Shearl Bennett.[3] Subsequent to this murder, the two suspects, Jeremy Francis and William Langrum, were observed by a covert police officer engaged in an aggravated robbery, using a knife that is similar to the knife used in the murder of Martin Coronado.
>
> On view of the aggravated robbery led to a vehicle chase, as well as a foot chase, which led to the apprehension of both Jeremy Francis and William Langrum, which led to the subsequent finding of the knife, as well as the clothing, including the shoe of Jeremy Francis, which had the blood of Martin Coronado on it.
>
> We believe that, pursuant to cases such as <u>Galvez v. State</u>, <u>Crocket[t] v. State</u> and <u>Williams vs. State</u>, that those—the offenses of the aggravated robbery and the evading vehicle and evading on foot should be admissible so that the case is viewed in its entirety and not in a vacuum.
>
> [DEFENSE COUNSEL]: If I may respond, Your Honor. The State's planning to introduce evidence of another murder, or just the aggravated robbery and the chase?
>
> [THE PROSECUTOR]: We are not doing the other murder, Judge. Just the aggravated robbery and the chase.
>
> [DEFENSE COUNSEL]: And if the Court were to deem that is somehow relevant and admissible, we will ask the Court to do a balancing test of 403.

---

[3] Langrum was tried separately and convicted of the capital murder of Shearl Bennett. The conviction was affirmed by this Court. *See Langrum v. State*, No. 05–13–01489–CR, 2015 WL 468403 (Tex. App.—Dallas Feb. 2, 2015, pet. ref'd) (not designated for publication).

Because we believe, even if it may be relevant, the prejudicial effect is outweighed by its probative value.

THE COURT: The Court will evaluate the—evaluate at a future time. For the time being, Defense's objection is overruled.

Just before the State made its opening statement, the parties held an off-the-record discussion at the bench. In its opening statement, the State told the jury that the testimony would show how appellant came to be arrested for the capital murder of Martin Coronado:

You're going to hear that, at first, Dallas Police Department had no leads. They had a trail of bloody footprints, because the individuals responsible for killing Martin Coronado stepped in his blood while they were robbing him, and they left their mark behind.

You're going to hear that five days later, on September 21st, Jeremy Francis and his friend William Langrum were observed by Dallas Police Department covert officers engaged in an aggravated robbery of another individual here in Dallas: Charles Starks, with a knife.

You're going to hear that Charles Starks managed to luckily stumble backwards on a rock and fell to the ground and lived. But you're going to hear that Jeremy and William took off running with his property, got into their car and took off. Dallas Police Department got behind them. At first, it was the covert officer in a covert vehicle. And then once a patrol car got behind them, it was on. And it was a chase. And William and Jeremy drove—drove fast, jumped out of their car, ran on foot, managed to evade the officers, got back in their car, drove off again and then finally jumped out again; and the second time they were chased on foot, they were each caught.

You're going to hear that the knife that William Langrum tossed out is consistent with the knife that would have been used to make the wound of Martin Coronado, that caused his death. You're also going to hear that the shoes that Jeremy Francis was wearing on the 21st not only match or were similar to the prints found at the apartment complex where Martin Coronado was killed, but you're also going to hear that his blood—Martin Coronado's—is on the side of Jeremy Francis' shoe.

Appellant did not object to this statement. Nor did he object when, later, Officers Bennett and Eggleston testified regarding the aggravated robbery and the evading arrest/flight offenses. The State argues that by not objecting to the prosecutor's opening statement or to the testimony from the arresting officers regarding the aggravated robbery and the evading arrest/flight offenses, appellant failed to preserve his issue for appellate review.

–7–

Assuming, without deciding, that appellant's complaint was preserved, we review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). The trial court does not abuse its discretion unless its decision to admit or exclude the evidence lies outside the zone of reasonable disagreement. *See Martinez*, 327 S.W.3d at 736; *De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009). We will uphold the trial court's evidentiary ruling if it was correct on any theory of law applicable to the case. *See De La Paz*, 279 S.W.3d at 344.

Only relevant evidence is admissible. *See* TEX. R. EVID. 402.[4] Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401. Rule 404(b) provides that evidence of an accused's "other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." TEX. R. EVID. 404(b). Evidence of extraneous acts "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]" *Id.*

The exceptions listed in rule 404(b) "are neither mutually exclusive nor collectively exhaustive." *De La Paz*, 279 S.W.3d at 343. "The proponent of uncharged misconduct evidence need not 'stuff' a given set of facts into one of the laundry-list exceptions set out in Rule 404(b), but he must be able to explain to the trial court, and to the opponent, the logical and legal rationales that support its admission on a basis other than 'bad character' or propensity purpose." *Id.*

The State argues, in part, that evidence of the extraneous offenses was admissible

---

[4] Effective April 1, 2015, the Texas Supreme Court adopted amendments to the Texas Rules of Evidence. *See* 78 TEX. B.J. 42, 42 (Tex. 2015). The amendments were part of a restyling project that changed the wording, although not the substance, of the rules cited in this opinion. All citations to the rules of evidence in this opinion refer to the rules as they existed during the parties' trial.

because it was contextual evidence. *See Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993) (en banc). Evidence of another crime, wrong, or act may be admissible as same transaction contextual evidence when several crimes are intermixed, blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony of any one of them cannot be given without showing the others. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). The purpose of admitting extraneous evidence as same transaction contextual evidence is to place the instant offense in context. *Nguyen v. State*, 177 S.W.3d 659, 667 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). "[I]t has long been the rule in this State that the jury is entitled to know all the relevant surrounding facts and circumstances of the charged offense; an offense is not tried in a vacuum." *Moreno v. State*, 721 S.W.2d 295, 301 (Tex. Crim. App. 1986). But same transaction contextual evidence is admissible as an exception under rule 404(b) only when the offense would make little or no sense without also bringing in that evidence, and only to the extent it is necessary to the jury's understanding of the offense. *Devoe*, 354 S.W.3d at 469.

In this case, the State had to prove the identity of the perpetrator or perpetrators of the capital murder of Martin Coronado. Detective Montenegro testified that, when the investigation began, there was no physical evidence other than a trail of bloody footprints found at the crime scene, and no one saw the commission of the offense. The break in the case occurred five days after the offense, when a police officer saw appellant and Langrum committing the aggravated robbery of someone else, pursued them as they fled, and, with the assistance of another officer, arrested them. The police recovered a knife that was used in the aggravated robbery and also recovered clothing from appellant and Langrum. Through forensic, serological, DNA, and cell phone evidence, they were able to connect appellant to Coronado's murder. The trial court could have concluded that the extraneous offense evidence was necessary in order for the State to put

–9–

the capital murder into context for the jury and to show how appellant was connected to the offense. Indeed, the recovery of the knife and the clothing would have been difficult to explain to a jury without referring to the aggravated robbery offense that first brought appellant to the police's attention. The jury was entitled to hear these interwoven and highly related facts. *See Moreno v. State*, 721 S.W.2d at 301. Furthermore, appellant's and Langrum's flight was admissible as a circumstance from which an inference of guilt may be drawn. *See Devoe*, 354 S.W.3d at 469; *Alba v. State*, 905 S.W.2d 581, 586 (Tex. Crim. App. 1995); *see also Foster v. State*, 779 S.W.2d 845, 859 (Tex. Crim. App. 1989). Based on this record, the trial court could have reasonably concluded that the extraneous offense evidence was admissible as same transaction contextual evidence.

However, evidence that is admissible under rule 404(b) may nonetheless "be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403; *Mozon v. State*, 991 S.W.2d 841, 846–47 (Tex. Crim. App. 1999). When undertaking a rule 403 analysis, the trial court must balance: (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).[5]

---

[5] The *Gigliobianco* court noted that this newly-worded framework merely refined and built upon its previous analysis, and brought it into line with the plain text of rule 403. *See Gigliobianco*, 210 S.W.3d at 642 n. 8 ("In some of our precedents, we stated that a proper Rule 403 analysis included, but was not limited to, four factors: (1) the probative value of the evidence, (2) the potential of the evidence to impress the jury

A judge is presumed to have engaged in the required balancing test once rule 403 is invoked. *See Williams v. State*, 958 S.W.2d 186, 195–96 (Tex. Crim. App. 1997) (citing *Santellan v. State*, 939 S.W.2d 155, 173 (Tex. Crim. App. 1997)). Rule 403 favors admissibility and "the presumption is that relevant evidence will be more probative than prejudicial." *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1991); *see also De La Paz*, 279 S.W.3d at 343. As with rule 404, a trial court does not abuse its discretion when it admits or excludes evidence pursuant to rule 403 so long as its decision is within the zone of reasonable disagreement. *See De La Paz*, 279 S.W.3d at 343–44.

Regarding the rule 403 factors, the first factor favors admissibility because the evidence helped to prove the identity of the perpetrator of the offense. It also placed the charged offense in context for the jury and served to make the fact or consequence that appellant committed that offense more probable by showing how and why he first came to the police's attention, and how the knife and clothing were recovered. The State's need for the evidence was significant because this was a circumstantial evidence case with no eyewitnesses and no initial leads. The evidence was extremely probative to the State's ability to put the evidence into context for a jury, to show how the police developed their case against appellant, and to prove appellant's identity as one of the perpetrators. As for the third factor, the prejudicial impact was minimal and the extraneous offense evidence was not so inherently inflammatory that it should have influenced the jury in some "irrational but indelible way." *See Wheeler v. State*, 67 S.W.3d 879, 889 (Tex. Crim. App. 2002). The fourth and sixth factors concern the tendency of the evidence to confuse or distract the jury from the main issues and the amount of time consumed by the presentation of the extraneous offense evidence. *See Gigliobianco*, 210 S.W.3d at 641. These factors likewise

---

in some irrational yet indelible way, (3) the time needed to develop the evidence, and (4) the proponent's need for the evidence. By our decision today, we do no more than refine and build upon our previous analysis, and bring it in line with the plain text of Rule 403.") (citation omitted).

favor admissibility because the extraneous offense evidence did not take a significant amount of time at trial to develop. The fifth factor concerns a tendency of an item of evidence to be given undue weight by a jury that has not been properly equipped to evaluate the probative force of the evidence. This factor concerns "a tendency of an item of evidence to be given undue weight by the jury on other than emotional grounds. For example, 'scientific' evidence might mislead a jury that is not properly equipped to judge the probative force of the evidence." *Id.* (citation omitted). The extraneous offense testimony was not prone to such a tendency, as it concerned matters easily understandable by a jury. Thus, the fifth factor also weighs in favor of admission. For all of these reasons, then, we conclude that the probative value of the extraneous offense evidence was not substantially outweighed by the danger of unfair prejudice or any other rule 403 concerns. *See* TEX. R. EVID. 403; *Gigliobianco*, 210 S.W.3d at 641–42. We overrule appellant's issue.

Additionally, we note that the judgment in this case, under "Punishment and Place of Confinement," incorrectly states "LIFE INSTITUTIONAL DIVISION TDCJ," when the trial court imposed a mandatory sentence of life imprisonment without parole. *See* TEX. PENAL CODE ANN. § 12.31(a)(2). Based on the record and the relevant law, we modify the judgment to reflect that appellant was sentenced to life imprisonment without parole. *See* TEX. R. APP. P. 43.2(b); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd) (providing that an appellate court has the authority to modify incorrect judgments sua sponte when the necessary information is available to do so); *see also Tyler v. State*, 137 S.W.3d 261, 267–68 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (authority to modify judgment is not dependent upon a party's request).



# Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

JEREMY M. FRANCIS, Appellant

No. 05-14-00218-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 5, Dallas County, Texas
Trial Court Cause No. F11-62030-L.
Opinion delivered by Justice Myers. Chief
Justice Wright and Justice Evans
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

"Punishment and Place of Confinement: LIFE INSTITUTIONAL DIVISION TDCJ" should be changed to read "Punishment and Place of Confinement: LIFE WITHOUT PAROLE INSTITUTIONAL DIVISION TDCJ."

As **REFORMED**, the judgment is **AFFIRMED**. We direct the trial court to prepare a new judgment that reflects this modification.

Judgment entered this 23rd day of June, 2015.

Jeremy Francis 1408081
Telford
3899 St Hwy 98
New Boston Tx 75570

Clerk
Court of Criminal Appeals of Texas
P.O. Box 12308
Capital Station
Austin, Tx 78711



